# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| HENRY RAYHONS,<br><br>    Plaintiff,<br><br>vs.<br><br>SUZAN BRUNES, LINDA DUNSHEE, JOHN G. BRADY, D.O., ABCM CORPORATION d/b/a Concord Care Center, and SUSAN KRISKO,<br><br>    Defendants. | No. 16-CV-3084-LRR<br><br>**ORDER** |

_____

## *I. INTRODUCTION*

The matters before the court are Defendant Susan Krisko's "Motion to Dismiss for Failure to State a Claim" ("Motion") (docket no. 11), Plaintiff Henry Rayhons's "Motion to Extend the Deadline to Resist" ("Motion for Extension") (docket no. 17) and Defendant John G. Brady, D.O.'s "Motion for Summary Judgment" (docket no. 19).

## *II. PROCEDURAL HISTORY*

On April 26, 2016, Plaintiff Henry Rayhons filed a "Petition at Law and Jury Demand" ("Petition") (docket no. 3) in the Iowa District Court for Hancock County, Iowa ("Iowa District Court"). In the Petition, he asserts nine claims against various defendants—three claims against Suzan Brunes, three claims against Linda Dunshee, five claims against Brady, two claims against ABCM Corporation and one claim against Krisko: (1) Count I asserts a claim for defamation under Iowa law against Brunes, Dunshee and Brady; (2) Count II asserts a claim for intentional infliction of emotional distress under Iowa law against Brunes, Dunshee and Brady; (3) Count III asserts a claim for malicious prosecution under Iowa law against Brunes and Dunshee; (4) Count IV asserts a claim for negligent infliction of emotional distress under Iowa law against Brady;

(5) Count V asserts a claim for negligence under Iowa law against Brady; (6) Count VI asserts a claim for loss of consortium under Iowa law against Brady; (7) Count VII asserts a vicarious liability claim under Iowa law against ABCM Corporation with respect to Brady's conduct, who is ABCM Corporation's employee; (8) Count VIII asserts a negligent retention and supervision claim under Iowa law against ABCM Corporation with respect to Brady; and (9) Count IX asserts a claim pursuant to 42 U.S.C. § 1983 against Krisko, and states that Krisko violated Plaintiff's substantive due process rights under color of state law.

On July 14, 2016, Krisko filed a Notice of Removal (docket no. 2), which brought the case before the court. On July 15, 2016, Krisko filed the Motion. On September 6, 2016, Rayhons filed the Motion for Extension, in which he requests to submit an out-of-time Resistance to the Motion (docket no. 19). On the same date, Brady filed the Motion for Summary Judgment. No party has requested oral arguments on the matters, and the court finds that oral arguments are unnecessary. The matters are ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the claim in Count IX because it arises under the United States Code. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the claims in Counts I through VIII because they arise out of the same common nucleus of operative fact as the federal claim. *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

### IV. ANALYSIS

#### A. *Motion for Extension*

As an initial matter, the court shall address the Motion for Extension. In the Motion for Extension, Rayhons requests that the court extend the deadline for his filing of

a Resistance to the Motion. *See* Motion for Extension at 1. Rayhons argues that the requested extension is justified under Federal Rule of Civil Procedure 6(b) on grounds of excusable neglect, citing the shortcomings of a new legal assistant in counsel's office. *See id.* at 1-2.

"In determining whether neglect is excusable, the following factors are particularly important: (1) the possibility of prejudice to the defendant, (2) the length of delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Kurka v. Iowa County, Iowa*, 628 F.3d 953, 959 (8th Cir. 2010). "These factors do not bear equal weight as the reason for delay is generally a key factor in the analysis." *Id.* "The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010)) (internal quotation marks omitted).

Under Local Rule 7(e), the deadline for filing a Resistance to the Motion was July 29, 2016. *See* LR 7(e) (requiring that resistances to motions be filed "within 14 days after the motion is served"). The Motion for Extension, and the subsequently filed Resistance, were filed thirty-nine days after this deadline. The court finds that the length of delay is significant and gives great weight to that factor. Likewise, the court finds that Krisko has likely incurred some prejudice simply due to the sheer length of the delay. The court further notes that the reason for the delay was within the control of Rayhons's counsel, as Rayhons concedes. *See* Motion for Extension at 17. While the delay does not appear to be the result of any ignorance of the rules or bad faith, the court nevertheless concludes that the relevant factors weigh strongly against a finding of excusable neglect sufficient to warrant consideration of the untimely Resistance. Accordingly, the Motion for Extension shall be denied and the Resistance to the Motion shall be deemed untimely and shall be

stricken. The court shall proceed to address the Motion as if it was unresisted. At any rate, having read the Resistance, the analysis confuses the legal standards at issue and would not have affected the court's disposition of this case.

## B. Motion to Dismiss

In the Motion, Krisko seeks to dismiss Count IX of the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6), Motion at 1, which provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Krisko argues that the court should dismiss Count IX because her activities as a prosecutor were "intimately associated with the judicial phase of the criminal process" and that she is entitled to absolute immunity. Brief in Support of the Motion at 5 (docket no. 11-1) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). However, the Rule 12(b)(6) inquiry is distinct from the question of absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("[T]he [court below] . . . [incorrectly] conflate[s] the question whether a § 1983 plaintiff has stated a cause of action with the question whether the defendant is entitled to absolute immunity for [their] actions."). Therefore, the court shall address each argument separately.

### 1. *Failure to state a claim*

Krisko first argues that Count IX should be dismissed for failure to state a claim. Motion at 1. The question for a court considering a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). The "complaint need not pin plaintiff's claim for relief to a precise legal theory." *Id.* at 530. However, in order to cross the threshold, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the pleading requirements of Federal Rule of Civil Procedure 8 "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). It is insufficient to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id*. (quoting *Twombly*, 550 U.S. at 557). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Although the court must accept as true all factual allegations contained in the Petition, the court need not accept legal conclusions disguised as facts. *Id*.

In the Petition, Rayhons claims that Krisko investigated Rayhons and dispatched an agent to interview a witness for purposes of determining whether to criminally charge Rayhons for sexual abuse in state court.[1] Rayhons further alleges that Krisko "manufactured [the witness's] words into a statement that the noises heard by [the witness] were sexual" and subsequently charged plaintiff on or about August 14, 2014. Petition ¶¶ 35, 36.

---

[1] To the extent Rayhons's allegations can be interpreted to rely on an agency theory based on a relationship between Krisko and the investigator, Rayhons has not pled any facts that support a claim that the agent violated his civil rights, and any claim that Krisko violated Rayhons's civil rights merely by dispatching an investigator to interview a witness is not plausible on its face. *See Ashcroft*, 556 U.S. at 678.

Though a close call, Rayhons has pleaded sufficient facts. Though bare bones, the claim that his constitutional rights were violated is plausible on its face. "[A] plaintiff can make out a violation of substantive due process by 'offering evidence of . . . the manufacture of [] false evidence.'" *White v. Smith*, 696 F.3d 740, 754 (8th Cir. 2012) (alteration omitted) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)). Accepted as true, Rayhons's allegation that Krisko "manufactured [the witness's] words . . . .", Petition ¶¶ 34, 35, allows the court to reasonably infer that Krisko is liable for the misconduct alleged. The allegations are not legal conclusions, but facts that support Rayhons's claim. Accordingly, the court finds that Rayhons has pleaded sufficient facts to state a claim.

### 2. *Prosecutorial immunity*

Though the court finds that Rayhons has alleged facts sufficient to state a claim, Krisko argues that Count IX of the Petition should be dismissed because it is "barred by absolute immunity." Brief in Support of the Motion at 5. Prosecutorial immunity is a sub-species of absolute judicial immunity. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ."). The doctrine of judicial immunity was expanded to cover prosecutors' activities in *Imbler v. Pachtman*. A prosecutor's "activities . . . intimately associated with the judicial phase of the criminal process . . . [are] functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430. In expanding absolute immunity to prosecutors, the *Imbler* court recognized that "the duties of the prosecutor . . . involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. . . . Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id.* at 431 n.33. Subsequent cases further clarified the reach of absolute immunity for prosecutors to include

6

"[a]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as an advocate of the State." *Buckley*, 509 U.S. at 273. However, a prosecutor is not entitled to absolute immunity if his or her conduct is administrative or investigative in nature. *Id.* (explaining when a prosecutor is entitled to qualified immunity.) In other words, a prosecutor functioning qua prosecutor, rather than as a police officer or other official, is entitled to absolute immunity.

The relevant issue, therefore, is whether or not Krisko was performing the traditional functions of an advocate of the State when she allegedly "dispatched an agent to interview" the witness, Petition ¶ 34, "manufactured [the witness's] words," Petition ¶ 35, and "charged [Rayhons] with [s]exual [a]buse" relying on the "manufactured evidence," Petition ¶ 36. The Eighth Circuit Court of Appeals recognizes that "[f]unctions [] 'intimately associated with the judicial phase of the criminal process' as opposed to investigative 'police work' or administrative duties [are] absolutely shielded' from liability under [S]ection 1983 claims." *Reasonover v. St. Louis Cty Mo.*, 447 F.3d 569, 579-80 (8th Cir. 2006) (second and third alterations in original) (internal citations omitted). A prosecutor does not step outside of her traditional functions as a prosecutor simply because particular activities could be characterized as investigative or administrative, or could also be performed by a police officer or administrator. For example, "investigation to secure the information necessary to the prosecutor's decision to initiate criminal proceedings . . . is absolutely immune . . . ." *Williams v. Hartje*, 827 F.2d 1203, 1210 (8th Cir. 1987). Likewise, interviewing witnesses and preparing them to testify "[i]s prosecutorial and not police work." *Reasonover*, 447 F.3d at 580. "Not all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, [s]he must confer with witnesses, and conduct some of h[er] own factual investigation." *Id.* (quoting *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir. 1980)). When acting as an advocate, a prosecutor is not divested of immunity even by "allegations of malice, vindictiveness, or self-interest," or by

7

"knowingly present[ing] false, misleading, or perjured testimony, or even . . . withh[olding] or suppress[ing] exculpatory evidence." *Id.*

In this case, the relevant facts are consistent with those of a prosecutor performing the traditional functions of an advocate. "Prosecutors enjoy absolute immunity in their *review of* and decisions to charge a violation of the law." *Sample v. City of Woodbury*, No. 15-3213, slip op. at 4 (8th Cir. Sept. 6, 2016) (emphasis added). Krisko's dispatching of an agent to interview the witness was prosecutorial insofar as she sought additional information, reviewed the information provided and relied on such information when she decided to bring criminal charges. *See Williams*, 827 F.2d at 1210. Charging Rayhons with a crime is also clearly a prosecutorial function intimately associated with the judicial phase of the criminal process. Finally, Rayhons's allegation that Krisko "manufactured" evidence against him does not defeat Krisko's prosecutorial immunity. Even if Krisko had knowingly presented false testimony, she would still be immune from suit. *See Reasonover*, 447 F.3d at 580. Rayhons's claim is therefore barred by absolute prosecutorial immunity.[2]

"It would make little sense to immunize the prosecutor's decision to prosecute while not immunizing the immediately preceding steps which led to that decision." *Williams,*

---

[2] The court's conclusion is not altered by the holding in *McGhee v. Pottawattamie County, Iowa*, which stated that a prosecutor who brings charges and secures a conviction by "obtaining, manufacturing, coercing and fabricating evidence" is not entitled to immunity, because such actions are not "distinctly prosecutorial function[s]." *McGhee v. Pottawattamie County, Iowa*, 547 F.3d 922, 933 (8th Cir. 2008). Unlike the facts at issue in *McGhee*, Rayhons has offered no facts suggesting that Krisko coerced anybody or fabricated any evidence out of whole cloth. *See generally* Petition. Rather, despite using the term "manufactured," Rayhons alleges that Krisko manipulated witness testimony that was actually provided. *Cf. McGhee*, 547 F.3d at 926-27 (reaching its conclusion of no immunity where prosecutors used an astrologer as an investigatory tool, personally canvassed a neighborhood for suspects and polluted a putative witness's testimony by informing him during in-person interrogations of the specific murder weapon that was used). Therefore, the court finds that the instant case is distinguishable from *McGhee*.

827 F.2d at 1210. Accordingly, Krisko is not divested of immunity merely because her alleged actions occurred "[p]rior to filing formal criminal charges."[3] Petition at 15. After her agent interviewed the witness, Krisko clearly believed it was appropriate to file charges, which is a distinctly prosecutorial function. Because Krisko is absolutely immune from suit for the allegations in Count IX, the court shall dismiss the Count from the Petition.

## V. REMAND TO THE IOWA DISTRICT COURT

Count IX is the only Count in the Petition over which the court has original jurisdiction. Because Counts I through VIII are before the court only on supplemental jurisdiction, and because the court has found that Count IX should be dismissed, the court finds that it is proper to remand the case to the Iowa District Court for Hancock County. *See* 28 U.S.C. § 1367(c)(3); *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016-17 (8th Cir. 2015) ("When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims" (quoting *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 792 (8th Cir. 2006))); *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) ("We stress the need to exercise judicial restraint and avoid state law issues whenever possible. We also recognize within the principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions."). Finally, the court finds that there are no compelling factors that point towards retention of jurisdiction over the state

---

[3] The reference to formal charges in *McGhee* is dicta, given that the temporal boundary given by the Supreme Court in *Buckley* was the existence of probable cause to arrest, rather than the act of filing charges itself. *See McGhee*, 547 F.3d at 929 (citing *Buckley*, 509 U.S. at 274). The facts that Plaintiff has offered "[are] all actions associated with prosecuting [] alleged criminal acts," and therefore are distinctly prosecutorial acts that are entitled to absolute immunity from suit. *Reasonover*, 447 F.3d at 580.

9

law claims in the case of dismissal of the federal claim. *See Thomas v. United Steelworkers Local 1983*, 743 F.3d 1134, 1141 (8th Cir. 2014). Because it is appropriate to remand the case to the Iowa District Court for Hancock County, the court need not address the Motion for Summary Judgment, which addresses several of Rayhons's state law claims.

## VI. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1) The Motion for Extension (docket no. 17) is **DENIED**;

(2) The Resistance (docket no. 18) is **STRICKEN**;

(3) The Motion to Dismiss (docket no. 11) is **GRANTED**;

(4) Count IX of the Petition (docket no. 3) is **DISMISSED**;

(5) The Clerk's Office is **DIRECTED** to satisfy for administrative purposes the Motion for Summary Judgment (docket no. 19); and

(6) The case is **REMANDED** to the Iowa District Court.

**IT IS SO ORDERED**.

**DATED** this 16th day of September, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA